2022 IL App (2d) 190848
No. 2-19-0848
Opinion filed January 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-101 |
| JAMES HARE, | ) ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, James Hare, appeals both the revocation of his probation and his ensuing

sentence of five years' imprisonment. At issue in this appeal is whether the trial court erred when

it failed to advise defendant, who was sentenced *in absentia*, of his potential eligibility to elect

probation and treatment for his drug and alcohol abuse under the Substance Use Disorder Act (Act)

(20 ILCS 301/1-1 *et seq.* (West 2018)). For the reasons set forth below, we affirm

¶ 2                            I. BACKGROUND

¶ 3   On March 1, 2018, defendant was charged in a one-count indictment with domestic battery

(720 ILCS 5/12-3.2(a)(2) (West 2018)) (No. 18-CF-101). This was charged as a Class 4 felony

because defendant had previously been convicted of domestic battery, on May 17, 2006, in

Winnebago County (No. 06-CM-3130). The indictment alleged that on February 14, 2018, defendant made contact of an insulting and provoking nature with his fiancée, Dena Roethler, in that he scratched her neck and pushed her down. On March 16, 2018, defendant agreed to plead guilty in exchange for 24 months' probation. As a condition of his probation, defendant was to refrain from consuming alcohol and complete the Partnership Abuse Intervention Program (PAIP).

¶ 4    On July 27, 2018, pursuant to a plea agreement, defendant pled guilty to a misdemeanor domestic battery charge (No. 18-CM-180) arising out of an argument between himself and Roethler that occurred on May 16, 2018. The terms of the agreement were that defendant would plead guilty in exchange for time served, the State would "hold back" on defendant's prior convictions so that defendant would be charged with only a misdemeanor, and the State would dismiss its May 22, 2018, petition to vacate probation, with defendant continuing on probation from his previous guilty plea (No. 18-CF-101).

¶ 5    On January 17, 2019, the State filed a petition to vacate probation and on January 24, 2019, filed an amended petition. The amended petition alleged that defendant had violated the terms of his probation by being discharged from the PAIP program and for drinking alcohol on January 8 and 18, 2019. A hearing was held on the State's amended petition on February 12 and 27, 2019.

¶ 6    At the hearing, Terry Lee Cunningham, a facilitator at the PAIP program that defendant was participating in, testified as follows. On January 8, 2019, an incident occurred during the "check-in" period at the beginning of the group's session. While other individuals were speaking, defendant was interrupting them in what Cunningham described as "outbursts." He thought this was unusual, as defendant was normally quiet and respectful. Linda, the director of the program, asked defendant if everything was okay, and defendant said it was. The session then continued,

and defendant made further outbursts. Linda asked Cunningham to go with defendant into the hallway to determine what was going on.

¶ 7     When Cunningham got close to defendant in the hallway, he smelled alcohol on defendant's breath and asked him about it. Defendant got defensive but admitted to drinking before the session.

¶ 8     Cunningham then asked defendant to sit down with him, with the goal of determining why he had been drinking and directing him toward better coping mechanisms. At that point defendant became aggressive, speaking louder and making fists with his hands. Cunningham then asked defendant to leave the building, which he did without incident.

¶ 9     Cunningham explained that as a result of the January 8, 2019, incident, defendant was unsuccessfully discharged from the program on two different bases. The first was for appearing at a session under the influence, which was grounds for automatic termination from the program. This was something Cunningham had previously explained to defendant and of which he reminded the participants during the group sessions. Second, participants were allowed to miss only a total of four sessions, and defendant's failure to complete that night's session constituted his fifth absence.

¶ 10     Officer Michelle Bogdonas of the City of Belvidere Police Department testified as follows. On January 18, 2019, at 8:06 p.m., she was dispatched to a call regarding a domestic dispute at 405½ South State Street. The caller was Roethler. When Bogdonas arrived at the home, Roethler and defendant were there. Bogdonas spoke with defendant, who exhibited signs of intoxication, specifically an odor of alcohol on his breath, red glassy eyes, and slurred speech. Roethler stated that she and defendant had been drinking and they got into an argument. She asked him to leave, but he would not, which prompted her to call the police. Defendant was arrested on an outstanding

warrant relating to the State's petition to revoke probation but was not given a breathalyzer or any other test to determine whether he had been drinking.

¶ 11    Roethler testified that defendant had not been drinking the night of January 18, 2019. Defendant testified that he had not been drinking on January 8, 2019, or on January 18, 2019. He explained that he had missed the PAIP sessions due to a hernia, a dental problem, and inclement weather. He also testified that, when he left the PAIP session on January 8, 2019, Cunningham told him to return the next week.

¶ 12    The trial court found that defendant had violated the terms of his probation and set a sentencing date of April 8, 2019. The court advised defendant that if he failed to appear at the sentencing hearing he could be sentenced *in absentia* and that the maximum sentence was six years' imprisonment with four years of mandatory supervised release.

¶ 13    Defendant failed to appear at the April 8, 2019, sentencing hearing and was sentenced *in absentia* to five years' imprisonment. The trial court emphasized that defendant had a problem with alcohol that was not getting any better and that defendant had been on some form of conditional sentence for most of his adult life, with most of them being unsuccessful.

¶ 14    Defendant filed a motion to reconsider the sentence on April 23, 2019, and an amended motion to reconsider on July 26, 2019. On July 26, 2019, defendant also filed a motion for a new hearing or to reconsider the revocation of probation and a motion for a new sentencing hearing pursuant to section 115-4.1(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4.1(e) (West 2018)). A hearing was held on these motions on August 30, 2019, with defendant present. The trial court denied all three motions. Defendant timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16　Defendant argues that the trial court erred by failing to advise him that, under the Act, electing probation and treatment were possible sentencing options and by failing to conduct further proceedings as required under the statute. He further argues that the trial court was aware of defendant's problem with alcohol and even acknowledged it at the hearing on his motion to reconsider the sentence. He argues that thus, under the Act, the trial court was obligated to advise him of these alternative sentencing options. Defendant maintains that the trial court should have advised him before he was initially sentenced to probation when he pled guilty to the felony domestic battery charge, at his sentencing upon the revocation of his probation, and at the hearing on August 30, 2019, when the trial court heard argument on three motions.

¶ 17　As an initial matter, regarding defendant's argument that the trial court should have advised him of the possibility of electing treatment under the Act before he was initially sentenced to probation, "[t]he general rule is that where no direct appeal was taken from the original order of probation and the time for appeal had expired, a court will be later precluded from collaterally reviewing the propriety of that initial order in an appeal from the revocation of that probation." *In re T.E.*, 85 Ill. 2d 326, 333 (1981). Further, as defendant was initially sentenced to probation as part of a negotiated guilty plea, in order to appeal his sentence defendant would have had to move to withdraw his plea within 30 days of his sentencing. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Accordingly, we lack jurisdiction to consider whether the trial court should have advised defendant before he was initially sentenced to probation.

¶ 18　Defendant acknowledges that, because trial counsel failed to raise and preserve for appeal the issue of eligibility for probation and treatment under the Act, the argument is forfeited, and he urges this court to consider the issue under both prongs of the plain error rule. The plain error rule allows a defendant to bypass normal forfeiture principles where:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Defendant argues that both prongs of the plain error analysis apply. Defendant maintains that the first prong applies because the evidence of his drug abuse not only was closely balanced but strongly favored him insofar as it demonstrated that he had a substance abuse issue. As to the second prong, defendant maintains that failing to advise him of the possibility of electing probation and treatment deprived him of a fair sentencing hearing and led to an unauthorized sentence being imposed upon him.

¶ 19    In response, the State argues that the trial court did not err in failing to advise defendant of the possibility of electing probation and treatment under the Act, because defendant's underlying conviction of felony domestic battery rendered him ineligible to elect treatment under section 40-5(1) of the Act (20 ILCS 301/40-5(1) (West 2018)). Defendant maintains that his conviction of domestic battery did not constitute a crime of violence within the meaning of the Act, as he was charged under subsection (a)(2) of the domestic battery statute with making "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3.2(a)(2) (West 2018).

¶ 20    The State further argues that, in rendering its sentence, the trial court found that defendant was not likely to be rehabilitated through treatment and that his imprisonment was necessary for the protection of the public. As such, the trial court complied with section 40-10(c) of the Act (20

ILCS 301/40-10(c) (West 2018)). In support, the State cites *People v. Edwards*, 44 Ill. App. 3d 353, 355-56 (1976), for the proposition that such consideration need not be explicit.

¶ 21    We note that the parties disagree as to what standard of review applies. Defendant maintains that *de novo* review is appropriate, as this case involves a matter of statutory construction and the trial court never considered the issue of defendant's eligibility for probation and treatment under the Act. See *People v. Davis*, 199 Ill. 2d 130, 135 (2002); *People v. Cox*, 2017 IL App (1st) 151536, ¶¶ 56-58. The State maintains that a trial court's determination as to whether a defendant is eligible to receive probation and treatment under the Act is within the trial court's discretion and should therefore be reviewed for an abuse of discretion. *People v. Pulliam*, 254 Ill. App. 3d 92, 96-97 (1993). However, we need not determine which standard applies as, under either standard, we would conclude that the trial court committed no error.

¶ 22    Section 40-10(a) of the Act provides that:

> "If a court has reason to believe that an individual who is charged with or convicted of a crime suffers from a substance use disorder and the court finds that he or she is eligible to make the election provided for under Section 40-5, the court shall advise the individual that he or she may be sentenced to probation ***." 20 ILCS 301/40-10(a) (West 2018).

In construing a predecessor statute to the Act, our supreme court has held that the Act "requires the trial judge to inform every defendant whom he knows or has reason to believe is an addict of the possibility of treatment under the Act." *People v. Richardson*, 104 Ill. 2d 8, 17 (1984).

¶ 23    There can be little question in this case that the trial court had reason to believe that defendant suffered from a substance use disorder. In rendering its initial probation order, the trial court included a prohibition on defendant's consumption of alcohol. At the sentencing hearing on the revocation of defendant's probation, the trial court acknowledged that defendant had an alcohol

problem, stating, "[A]s related to alcohol, they might be mitigation if he were trying to get it under check, but unfortunately it's almost the opposite. I don't know if he knows that he has an alcohol problem." The trial court again acknowledged defendant's substance abuse issues at the hearing on defendant's motion to reconsider the sentence, stating, "He has an alcohol and drug addiction issue, and that is not getting any better." Accordingly, the trial court's obligation to inform defendant of the possibility of electing probation and treatment under the Act was triggered.

¶ 24      Under normal circumstances, the trial court's failure to advise a defendant of the possibility of electing probation and treatment under the Act, where the court has reason to believe that the defendant suffers from a substance use disorder, will result in a reversal of the trial court's order. See *People v. Lillard*, 247 Ill. App. 3d 683, 685-86 (1993). However, this case presents a matter of first impression, as defendant was sentenced *in absentia*.

¶ 25      The State maintains that defendant's failure to appear at the sentencing hearing and the trial court's subsequent failure to advise defendant of the possibility of electing probation and treatment under the Act constitutes invited error. We disagree that this situation presents invited error, as an invited error contemplates that the defendant requested to proceed in one manner, and then later complains that the course of action was error. *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17. However, we do believe that defendant's failure to appear at the sentencing hearing constituted a waiver of defendant's right to be advised of any possibility of electing probation and treatment under the Act.

¶ 26      Prior to the sentencing hearing, the trial court admonished defendant, saying, "Now, if you don't show up to court, there could be a sentencing hearing in your absence. Maximum sentence is commitment to the Department of Corrections for one to six years, followed by four years of mandatory supervised release. Do you understand that?" To which defendant replied, "Yes." When

a defendant has been advised that his or her failure to appear at trial may lead to the court proceeding in their absence and the defendant then fails to appear, the defendant has effectively waived his or her constitutional right to be present at trial and any attendant rights. *People v. Phillips*, 242 Ill. 2d 189, 197 (2011). Accordingly, defendant's failure to appear at his sentencing would constitute waiver, rather than invited error.

¶ 27 While no case has directly examined the effect a defendant's failure to appear has on the trial court's obligation under section 40-10 of the Act, Illinois courts have considered the effect a defendant's absence has on the trial court's obligation to advise a defendant of his or her right to appeal. Illinois Supreme Court Rule 605(b) (eff. Oct. 1, 2001) requires that the trial court advise a defendant of his or her appeal rights at the time of sentencing. The failure to do so is considered error and can result in the matter being remanded to the trial court to allow the defendant to perfect his or her appeal. *People v. Jamison*, 181 Ill. 2d 24, 29-30 (1998).

¶ 28 However, where a defendant is willfully absent from his or her sentencing hearing, he or she has waived his or her right to be personally informed of his or her appeal rights under Rule 605(b). *People v. Woolridge*, 292 Ill. App. 3d 788, 792 (1997). In reaching its decision, the court in *Woolridge* concluded that it was impossible for a trial court to proceed with sentencing *in absentia* and to strictly comply with the requirements of Rule 605(b); however, the court also reasoned that the supreme court rules regarding guilty pleas (Ill. S. Ct. R. 402 (eff. July 1, 1997)), post judgment motions (Ill. S. Ct. R. 604 (eff. Aug. 1, 1992)), and admonishments (Ill. S. Ct. R. 605 (eff. Aug. 1, 1992)) must be able to be read together with the statute regarding proceedings *in absentia* (Ill. Rev. Stat. 1991, ch. 38, ¶ 115-4.1) in such a way as to give effect to each. *Woolridge*, 292 Ill. App. 3d at 791; see also *People v. Wilk*, 124 Ill. 2d 93, 103 (1988). Accordingly, the *Woolridge* court concluded that "[a] defendant who does not appear for sentencing and is

therefore not present to be advised by the court cannot claim error when the court declines to engage in the ineffective ritual of advising an empty chair." *Woolridge*, 292 Ill. App. 3d at 791.

¶ 29 Similarly, we hold that the statute regarding proceedings *in absentia* should be read together with the Act to give effect to each. Accordingly, we hold that the Act does not require that a trial court advise an absent defendant of the possibility of electing probation and treatment, and therefore the trial court here did not err by failing to advise defendant of any possibility of electing probation and treatment under the Act at his sentencing hearing.

¶ 30 Regarding the hearing of August 30, 2019, the trial court heard argument on three motions: defendant's motion to reconsider the sentence, defendant's motion for a new hearing or to reconsider the revocation of his probation, and defendant's motion for a new sentencing hearing filed pursuant to section 115-4.1(e). Defendant maintains that the trial court failed to advise him of the possibility of electing probation and treatment under the Act at the August 30 hearing, as defendant was then present and could be advised of his rights. We do not find that any of the three motions triggered the trial court's obligation to advise defendant of the possibility of electing probation and treatment under the Act.

¶ 31 Beginning with the motion for a new hearing or to reconsider the revocation of his probation, the purpose of such a motion "is to inform the trial court of newly discovered evidence, a change in the law, or errors in the court's earlier application of the law." *Victor Township Drainage District 1 v. Lundeen Family Farm Partnership*, 2014 IL App (2d) 140009, ¶ 34. Accordingly, such a hearing would not trigger the obligation to advise defendant of the possibility of electing probation and treatment under the Act.

¶ 32 Regarding the motion to reconsider the sentence, "[t]he purpose of a motion to reconsider a sentence is to allow the trial court an opportunity to review the appropriateness of the sentence

imposed and correct any errors made." *People v. Root*, 234 Ill. App. 3d 250, 251 (1992). The purpose is not to conduct a new sentencing hearing. *People v. Vernon*, 285 Ill. App. 3d 302, 304 (1996). As discussed *supra*, the trial court did not err by not advising defendant of the possibility of electing probation and treatment under the Act, where he was absent from the sentencing hearing. As such, defendant's motion to reconsider the sentence did not obligate the trial court to advise defendant of any rights he may have had under the Act.

¶ 33    The issue before the trial court on a motion for a new sentencing hearing filed pursuant to section 115-4.1(e) is whether the defendant's "failure to appear in court was both without his fault and due to circumstances beyond his control." As this is the sole issue on such a motion, the trial court did not err by failing to advise defendant of the possibility of electing probation and treatment under the Act.

¶ 34    Accordingly, the trial court did not err when it did not advise defendant about the possibility of electing probation and treatment at the August 30, 2019, hearing, as defendant had already been lawfully sentenced. However, had any of those motions led to a new sentencing hearing, then the trial court would have been obligated to do so.

¶ 35    As we have found that the trial court did not err when it failed to advise defendant of the possibility of electing probation and treatment under the Act at both the sentencing hearing and the August 30, 2019, hearing, there can be no plain error. Therefore, we need not reach the State's alternative arguments that defendant was otherwise ineligible to elect treatment or that the trial court properly found that defendant's imprisonment was necessary for the protection of the public.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 38    Affirmed.

---

**No. 2-19-0848**

---

| | |
|---|---|
| **Cite as:** | *People v. Hare*, 2022 IL App (2d) 190848 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 18-CF-101; the Hon. C. Robert Tobin III, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and James K. Leven, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Richard S. London, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---